UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

J.M., by next friend,           )
FELICIA MOORE,                  )
                                )
            Plaintiff,          )
                                )
        vs.                     )       Case No. 4:05CV1075 (CEJ)
                                )
JOANNE B. BARNHART,             )
Commissioner of Social          )
Security,                       )
                                )
            Defendant.          )

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration.

**I.  Procedural History**

On January 30, 2003, minor plaintiff J.M., by her mother and next friend Felicia Moore, filed an application for supplemental security income disability benefits for a disabled child under Title XVI of the Social Security Act, 42 U.S.C. §§ 1391 et seq. Plaintiff claimed disability due to a learning disability and a behavior disorder. (Tr. 34). The application was denied initially on April 9, 2003. (Tr. 22). On February 17, 2005, following a hearing, an administrative law judge (ALJ) found that plaintiff was not disabled. (Tr. 15). On June 17, 2005, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 4). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

**II. Evidence Before the ALJ**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## A.  Hearing Testimony

The ALJ received testimony at a hearing held on October 21, 2004.  (Tr. 168-80).  Plaintiff was not present at the hearing, but she was represented by counsel.  Her mother, Ms. Moore, testified on plaintiff's behalf.

At the time of the hearing plaintiff was 15 years old.  Ms. Moore testified that plaintiff has a learning disability, and that her reading ability was below her grade level.  The learning disability also causes her to misbehave at school.  She expressed concern that plaintiff's behavior might lead to her expulsion from the St. Louis public school system.  She testified that she was seeking Social Security benefits so that she could obtain in-home tutoring for plaintiff.

Until age 13, plaintiff had attended regular public schools.  At Northwest Middle, the last regular school she attended, plaintiff took only special education classes and was in a "self-contained" classroom.  Plaintiff was dismissed from Northwest Middle after she was found in the bathroom smoking marijuana.  Plaintiff was transferred to St. Louis Alternative School.  Ms. Moore felt that plaintiff wasn't learning anything there.  Although no homework is assigned, plaintiff sometimes brings math problems home and her mother reviews them with her.  Ms. Moore also helps plaintiff with her reading.

Plaintiff goes to the YMCA for a dance class two to three times a week.  She had been involved in cheering, but was dismissed

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

from the squad. When plaintiff does not go to the YMCA, she and her older sister attend an instrumental music and dance program.

At home, plaintiff gets along with her mother and younger brother. Ms. Moore testified that plaintiff's father does not play any part in plaintiff's life. She testified that plaintiff feels rejected by her father. Plaintiff's friends do not come to her home, and plaintiff is not allowed to visit her friends' homes because of Ms. Moore's belief that plaintiff is easily influenced and misled. She stated that plaintiff tries to fit in and picks up bad habits, such as swearing, easily. When plaintiff misbehaves, her privileges are taken away.

**B. School Records**

Plaintiff's level of cognitive functioning was formally assessed on April 22, 1998. At the time, plaintiff was nine years old and in the third grade. She was found to have a verbal IQ of 79, a performance IQ of 72, and a full scale IQ of 73. On May 27, 1998, plaintiff was diagnosed with a specific learning disability in the area of basic reading skills and comprehension. Her behavior problems were considered to be secondarily related to her learning disability. From January through February 1998, the record shows that plaintiff received eight misconduct notices. Her problems ranged from disobedience and talking back to the teacher, to making loud noises in class during tests and using profanity. She was also cited for fighting.

In November 2001, plaintiff began attending Northwest Middle School. She was enrolled in special education classes at

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Northwest. Plaintiff was found smoking marijuana in the girls bathroom at the school in December 2002. She was suspended and expelled after this incident. Plaintiff enrolled in Des Peres Middle School, an alternative school, on January 27, 2003. She was withdrawn after four days of absence and four suspension days.

While plaintiff attended Des Peres Middle, special education team leader and resource teacher Paula Bentley worked with her. In a teacher questionnaire completed on March 3, 2003, Bentley stated that she worked with plaintiff on reading and writing skills for two periods a day. Bentley stated that plaintiff earned an F in written language and math and a D-minus in reading. She stated that plaintiff had been suspended several times in a one-month period. Bentley indicated that plaintiff has obvious problems understanding school and content vocabulary, reading and comprehending written material, providing organized explanations and descriptions, learning new material and applying problem-solving skills in class discussions. Bentley also indicated that plaintiff had serious problems comprehending and completing math problems, understanding and participating in class discussion, expressing ideas in writing and recalling and applying previously learned material.

Although plaintiff received extra help from a resource teacher, she did not make any effort to do her work and refused to complete assignments. Bentley stated that plaintiff "purposely focuses on outside distractions" and then disturbs others. Bentley indicated that plaintiff daily has the following serious problems:

4

paying attention when spoken to directly and focusing long enough to finish assigned activity or tasks. On a daily basis plaintiff has the following very serious problems: completing class/homework assignments, completing work accurately without careless mistakes and working at reasonable pace/finishing on time. Bentley wrote that plaintiff does not have a problem sustaining attention during play or sports activities, she waits for her turn, and organizes her own materials. She only has a slight problem carrying out single step instructions and working without distracting herself or others. Bentley identified several obvious problems that plaintiff had with interacting with and relating to others. She had serious problems following rules, respecting and obeying adults in authority, taking turns in a conversation and interpreting the meaning of facial expressions, body language, hints and sarcasm. Plaintiff only had a slight problem playing cooperatively with other children and relating experiences and telling stories. She has no problem making and keeping friends. Bentley noted that plaintiff's ability to move her body about and manipulate objects is not an area of concern. She also stated that plaintiff can do for herself if she focuses on the task. Bentley stated that plaintiff reacts before she thinks.

On December 18, 2002, a year-long IEP evaluation of plaintiff was completed. Plaintiff was then 14 years old. She was diagnosed with specific learning disability. She was found to be on the fourth grade level academically and to have cognitive ability skills in the low average range. Her functioning was found to be

three to four years below her same age peers. The IEP report states that plaintiff does not obey school and classroom rules. She has poor interpersonal relationships with her peers, especially with male students. (Tr. 103). The reviewer wrote that plaintiff needed "full time supervision." (Tr. 97).

In an informal interview for her IEP, plaintiff stated that her long-range goals include living in her own apartment and attending college or a university. She indicated that she enjoys going to the mall, talking on the phone, sports and listening to music. The IEP team found that plaintiff is in need of specialized transition services and support in the areas of career, vocational education and employment. It was determined that plaintiff needed a change in placement because she needed an increase in special education services. However, the IEP team found that plaintiff's behavior is not due to her disability. The team found that plaintiff knows right from wrong but regularly chooses to do as she pleases. She was found to be unwilling to accept responsibility for her actions. She was also found to be argumentative with adults in and outside of the classroom on a daily basis. Plaintiff seemed to want attention, and sports motivated her. (Tr. 97-98).

Plaintiff was in the ninth grade at St. Louis Learning Center - North, an alternative high school, during the 2003-2004 school year. The St. Louis Public Schools completed a follow-up IEP for plaintiff on March 19, 2004. She continued in the "specific learning disability" program. She was still functioning on a fourth grade level academically. Plaintiff's course of study was

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

general education curriculum with modifications. She took general education courses in English, math, science and social studies. She was outside the regular class less than 21% of the time. Plaintiff was found to be easily distracted and physically and verbally aggressive toward her peers and adults. The IEP team found that plaintiff had the potential to do much better. The IEP report states that plaintiff's behavior impeded her learning and that of others. In her IEP interview, plaintiff stated that she wanted to go to college and be employed as a beautician. She also said that she spends her leisure and recreation time swimming and in dance class at the YMCA.

In the first quarter of the 2003-2004 school year, plaintiff had seven absences. She earned C's in freshman English, social studies, biology, and social studies. She earned a D in algebra and an A in physical education. In the second quarter, she earned B's in both social studies courses, biology and physical education. She earned D's in freshman English and algebra. However, by the end of the school year, plaintiff had a B in physical education and D's in all other classes. She had ten absences in the spring semester.

### C. **Reports**

On January 30, 2003, Ms. Moore completed a Function Report and submitted it to the Social Security Administration. In the report Ms. Moore indicated that plaintiff's daily activities were not limited and that there was no limitation in the plaintiff's progress in understanding and using what she had learned. Ms.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Moore also indicated that plaintiff's impairments affected her social activities and behavior with other people, and that generally plaintiff did not get along with her mother, siblings or teachers. Ms. Moore indicated that plaintiff was able to take care of her personal hygiene, cook a meal for herself, and get to school on time. However, she further indicated that plaintiff does not wash and put away her clothes, help with household chores, study and do homework, keep out of trouble, accept criticism or correction, obey rules, ask for help or avoid accidents. Ms. Moore also indicated that plaintiff has a limited ability to pay attention and stick with a task. (Tr. 49-56).

On February 16, 2003, Ms. Moore completed a Daily Activities Report for the Disability Determinations section of the Missouri Department of Elementary and Secondary Education. In it, she wrote that plaintiff gets herself ready for school, but she is never ready on time and sometimes misses the school bus. Ms. Moore reported that plaintiff got along well with her siblings (ages 11, 12, and 16 years old), but she often starts arguments, calls them names and uses profanity. At school, Ms. Moore wrote, plaintiff does not know how to avoid fights and arguments, she is below her grade level, and she cannot solve multiplication and division problems. At home, plaintiff has daily chores, but she does not perform them completely unless Ms. Moore tells her what to do. Plaintiff understands directions, but she refuses to follow them. With respect to personal care, plaintiff brushes her teeth, but must be told to wash up. (Tr. 58-61).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In a Disability Report, Ms. Moore described plaintiff's disabling conditions as learning disability and behavior disorder. She wrote: "[Plaintiff] stays at home a lot, she is constantly being suspended from school, she doesn't keep up with her schoolwork and she has problems grasping her work. She is very disrespectful towards authority figures." Ms. Moore stated that plaintiff had not been seen by a doctor for her disabling conditions or for any emotional or mental problems. Also, plaintiff had not had any medical tests for illnesses, injuries, or conditions, and she was not taking any medication for any such issues. On the SSI application, Moore stated that plaintiff's family has been receiving a grant of $124.00 monthly from the Division of Family Services since January 2003. Plaintiff had no other income.

D. **Medical Records**

Plaintiff was evaluated on March 31, 2003, by psychologist James D. Reid, Ph.D. (Tr. 132-133, 154-157). The evaluation assessed plaintiff's cognitive functioning, adaptive behavior, academic achievements and social and emotional behavior. Dr. Reid found that plaintiff's social interaction was significantly impaired. Her supervisors, adaptation and ability to withstand stresses and pressures associated with day-to-day work were all slightly impaired. Dr. Reid found that plaintiff's ability to understand and to remember and follow instructions was within normal limits, as was her ability to maintain attention required to perform simple, repetitive tasks.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Dr. Reid wrote that plaintiff's demeanor was sullen and that she was initially non-cooperative. It was only after a counselor was called in to speak with plaintiff that plaintiff became "somewhat more cooperative." (Tr. 155) Dr. Reid described plaintiff's mannerisms and eye contact as "avoidant" and her behavior as "oppositional." The latter description was based in part on the plaintiff's history of fighting other children, as related by her mother, and plaintiff's initial lack of cooperation with the evaluation. Dr. Reid also found that plaintiff's oppositional behavior was imitative of the behavior that her mother exhibited during the evaluation[1]. (Id.).

No deficits were found in plaintiff's ability to speak and understand language. Dr. Reid also found:

> Attention and mental control were adequate: She correctly recited the alphabet in 11 seconds; counted backwards from 20 in 10 seconds without error. She can perform basic addition, multiplication, and subtraction. Immediate and short-term memory was intact. Knowledge of current events was within normal limits. Remote and long-term memory was intact. Current level of cognitive development was judged to be at the concrete operational stage. Level of abstraction was concrete. Insight and social judgment seemed somewhat limited.

Plaintiff was administered the Wechsler Intelligence Scale for Children - Third Edition. Her verbal IQ was 73, her performance IQ was 71, and her full scale IQ was 70. Dr. Reid diagnosed plaintiff with oppositional defiant disorder and borderline

---

[1]During the evaluation, plaintiff refused Dr. Reid's request that she stop reading a magazine. He noted that plaintiff's mother was "flipping through a magazine" and wearing dark glasses and earphones while the counselor was talking to her.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

intellectual functioning. His diagnosis also included psychosocial and environmental problems, or problems related to the social environment. Plaintiff had a GAF score of 75. Dr. Reid noted that motivation from plaintiff's mother was poor and that "[t]he mother would benefit from parent education classes. The child would benefit from highly structured settings with one on one supervision and immediate feedback for inappropriate behavior." According to Dr. Reid, the results of the evaluation "suggestive of a behavior disorder." Dr. Reid concluded that plaintiff's prognosis was fair.

In a Childhood Disability Evaluation form dated April 8, 2003, Ricardo C. Moreno, Psy.D., wrote that plaintiff's impairments were specific learning disability, oppositional/defiant disorder, and borderline intellectual functioning. He opined that the combination of impairments was severe, but that it did not meet, medically equal or functionally equal the SSA disability listings.

Plaintiff claims a disability onset date of October 1, 2002. In the disability report completed by the SSA field office, plaintiff's disability onset date was determined to be January 30, 2003, the date of her SSI application. The field report shows that plaintiff previously applied for SSI benefits but was denied on October 18, 1994.

### III. <u>Discussion</u>

The ALJ made the following findings:

1. An application for supplemental security income benefits was filed on the claimant's behalf on January 30, 2002.

2. The claimant is 16 years old and has never engaged in substantial gainful activity.

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

3.  The claimant has a learning disability due to low average or borderline intellectual functioning.

4.  The claimant's impairment does not meet or equal any of the criteria contained in Appendix 1, Subpart P, Regulations No. 4.

5.  The claimant's impairment does not result in marked or severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that she is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

"An individual under the age of 18 shall be considered disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I). To qualify for SSI benefits, a child must satisfy the following three factors: (1) she must not be engaged in substantial gainful activity; (2)her impairment must equal the duration requirement; and (3) the impairment must match or be medically equivalent to a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1.[2] <u>See Sullivan v. Zebley</u>, 493 U.S. 521, 526 (1990). "In plain words . . . a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." <u>Id</u>. at 529.

"[I]n general, a child's impairment(s) is of 'listing-level severity' if it causes marked limitations in two broad areas of functioning or extreme limitations in one such area." 20 C.F.R. § 416.925(b)(2). A child has a "marked" limitation when her "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities." 20 C.F.R. § 416.926a(e)(2)(I). A marked limitation is more than moderate but less than extreme. <u>Id</u>. A child has an "extreme" limitation when her "impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be very seriously

---

[2]"The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." <u>Sullivan</u>, 493 U.S. at 529-30.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities." <u>Id</u>. at § 416.926a(e)(3)(I). An extreme limitation is more than marked. <u>Id</u>.

The following six domains of development and functioning are addressed when considering a child's impairments: (1) Acquiring and using information is the first domain. An adolescent 12 to 18 years old should be able to demonstrate what she has learned in academic assignments and in daily living situations without assistance. She should be able to comprehend and express simple and complex ideas, and she should learn to practically apply the skills to prepare for entrance into the workplace. <u>Id</u>. at § 416.926a(g)(2)(v). (2) Attending and completing tasks is the second domain. A child age 12 to 18 be able to "pay attention to increasingly longer presentations and discussions, maintain [her] concentration while reading textbooks, and independently plan and complete long-range academic projects. . . . [Y]ou should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting." <u>Id</u>. at § 416.926a(h)(2)(v). (3) The third domain is interacting and relating with others. Here, a child 12 to 18 years old should be able to "initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups." The child should also be able to resolve conflicts and recognize the different social rules for acquaintances with her

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

peers and with adults. Id. at § 416.926a(i)(2)(v). (4) The fourth domain is moving about and manipulating objects. An adolescent plaintiff's age should be able to use motor skills freely and easily to get around in her school, neighborhood and community. She should also show mature skills in activities that require eye-hand coordination, such as typing. Id. at § 416.926a(k)(2)(v). (5) Caring for yourself is the fifth domain. Here, an adolescent older than 12 should "feel more independent from others and should be increasingly independent" in all day-to-day activities. She should also begin to think seriously about the future and what she will do when she finishes school. (6) Health and physical well being is the last domain. Here, the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies" on functioning are considered. Id. at § 416.926a(l).

The Court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

15

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In determining whether the Commissioner's decision is supported by substantial evidence, the Court reviews the entire administrative record, considering:

1.  The ALJ's credibility findings;

2.  the plaintiff's vocational factors;

3.  the medical evidence;

4.  the plaintiff's subjective complaints relating to both exertional and nonexertional impairments;

5.  third-party corroboration of the plaintiff's impairments; and

6.  when required, vocational expert testimony based on proper hypothetical questions, setting forth the claimant's impairment.

See Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

The Court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

In the instant case, the ALJ found that plaintiff's impairment does not meet or medically equal any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. In her appeal, plaintiff argues that the ALJ failed to consider whether her impairment meets the appropriate medical findings for mental retardation in the listing. She does not contest the ALJ's credibility

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

determinations. Plaintiff argues that she meets the listing for mental retardation because she has a full scale IQ of 70 and has been diagnosed with a specific learning disability in basic reading skills and reading comprehension. She argues that her learning disability results in a significant limitation of her ability to function. Defendant argues that plaintiff has been diagnosed with borderline intellectual functioning but not mental retardation. She further argues that the record does not support a diagnosis of mental retardation because plaintiff does not have deficits in adaptive functioning.

The Court will apply the three-step analysis for childhood disability determinations. The Court will evaluate whether plaintiff (1) has engaged in substantial gainful activity, (2) has severe impairments, and (3) has impairments that meet or are medically or functionally equal to the listed impairments. The ALJ found that plaintiff has not engaged in substantial gainful activity. He also found that plaintiff has a learning disability due to low average or borderline intellectual functioning. However, the ALJ found that plaintiff's impairment does not meet or equal any of the listed impairments. He further found that her impairment does not result in marked or severe functional limitations that can be expected to result in death or last continually for 12 months or more. The Court will evaluate whether substantial evidence exists to support the ALJ's findings as to step three.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

There is nothing in the ALJ's decision or in any documents in the record indicating that plaintiff argued that her disabilities met or were medically equal to mental retardation, as listed in 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05.  It appears that this claim is being asserted for the first time here.  Plaintiff argues that she meets listing requirements for mental retardation as defined in §§ 112.05D, 112.05E2.  Pursuant to the listings:

> 112.05 *Mental Retardation*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. . . .
> D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
> OR
> E.  A valid verbal, performance, or full scale IQ of 60 through 70 and: . . . .
> 2.  For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02.

20 C.F.R. pt. 404, subpt. P, app. 1.

Section 112.02B addresses the severity of impairments. Paragraphs B2b, B2c, and B2d respectively address historically or medically documented marked impairment in social functioning, historically or medically documented marked impairment in personal function, and marked difficulties in maintaining concentration, persistence or pace.

"To be classified as mentally retarded, the claimant must fit into the 'diagnostic description' set forth in the introductory paragraph" of § 112.05.  Thompson v. Barnhart, 2006 WL 581217 at *2 (D. Minn. Mar. 9, 2006) (quoting Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2005)).  The record supports the ALJ's findings that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

plaintiff has borderline intellectual functioning, and her impairment does not meet any of the listed impairments, including mental retardation. The ALJ's finding supports the contention that plaintiff has "significantly subaverage general intellectual functioning." However, the findings do not support the contention that plaintiff has deficits with adaptive functioning. The ALJ noted the results of Dr. Moreno's evaluation of plaintiff. "In assessing residual functional capacity, [Dr. Moreno] found that claimant had less than marked impairment in the ability to acquire and use information, attend and complete tasks and interact and relate with others and no limitation in the ability to move about and manipulate objects, care for herself and maintain her health and physical well-being." There is further evidence in the record to support a finding that plaintiff does not have deficits in adaptive functioning. For example, plaintiff's mother reported plaintiff's adaptive functioning to the school social worker. Dr. Reid found that the reported adaptive functioning was inconsistent with plaintiff's cognitive functioning. Additionally, a member of the special education team at Des Peres Middle School found that plaintiff "purposely focuses on outside distractions." Thus, substantial evidence supports the ALJ's finding that plaintiff's impairment does not meet or medically equal any of the criteria contained in the listings, which include mental retardation.

Although the Court finds that substantial evidence existed to support a finding that plaintiff's impairments did not medically equal the diagnostic definition of mental retardation in § 112.05,

the Court will evaluate plaintiff's allegations under the subsections D and E2 of § 112.05. As to subsection D, plaintiff argues that her specific learning disability in basic reading skills and reading comprehension meets the requirement that the claimant have an additional physical or other mental impairment imposing an additional and significant limitation of function. This subsection D requirement is met when the impairment has a "'more than slight or minimal' effect on his ability to perform work." Sird v. Chater, 105 F.3d 401, 403 (8th Cir. 1997) (quoting Cook v. Bowen, 797 F.2d 687 (8th Cir. 1986), in regard to the listing for mental retardation in adults). Further, the "functional limitation . . . 'need not be disabling in and of itself.'" Id. (quoting Branham v. Heckler, 774 F.2d 12, 14 (1st Cir. 1985).

Here, there is substantial evidence to support a finding that plaintiff's impairment does not have more than a slight or minimal effect on her ability to perform work. The ALJ found that plaintiff was enrolled in special education courses less than 21% of the time. The ALJ also found that she "performed well in science, language and history, but had some difficulty in math." The record shows that plaintiff's learning disability did not prevent her from earning a B in both of her social studies courses and a B- in biology during her ninth grade year. She also earned a C in English the first quarter of her ninth grade year. Additionally, although plaintiff alleged disability due to a learning disability and behavior disorder, the results of her

20

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

examination with counselor Morgan only suggested a behavior disorder. The Court finds that there is substantial evidence to support a finding that plaintiff's impairments do not meet the listing requirements for mental retardation in § 112.05D.

As to § 112.05E2, there is substantial evidence in the record to support the ALJ's finding that plaintiff does not have a listed impairment. The ALJ found that plaintiff has a full scale IQ of 70. However, he also noted Moore's report that plaintiff interacts well with family members. Further, the record shows that plaintiff goes to dance lessons with her sister, and she also participates in activities at the YMCA two or three times a week. There is substantial evidence to support a finding that plaintiff's social functioning is not impaired as defined by § 112.05E2 and § 112.02B2.

The ALJ's finding that plaintiff has no limitation in her ability to care for herself and maintain her health and physical well-being show that plaintiff is not impaired in her personal functioning, as related to § 112.02B2c. An SSA function report completed by plaintiff's mother, indicates that plaintiff takes care of her personal hygiene, cooks for herself and gets to school on time. Thus, there is substantial evidence to support a finding that plaintiff's personal functioning does not satisfy the requirements for impairment found in § 112.05E2 and § 112.02B2c.

Finally, the ALJ noted that the March 31, 2003 evaluation revealed that plaintiff's "concentration, persistence and pace were within normal limits." Also in March 2003, plaintiff's teacher

21

observed that plaintiff made no effort to do her work and that she purposely found distractions. However, plaintiff was found to have no difficulty paying attention during sports activities which she apparently enjoyed. A certain degree of concentration, persistence and pace are needed to participate in sports, dance, and YMCA activities. Thus, the Court finds that substantial evidence exists to support a finding that plaintiff's concentration, persistence and pace do not meet the impairment requirements of § 112.05 and §112.02B2d. There is substantial evidence to support the ALJ's finding that plaintiff does not have a listed impairment, including mental retardation.

## IV. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in her brief in support of complaint [#16] is **denied**.

A separate judgment in accordance with this memorandum and order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com